**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

————————————————————————— )
                                                          )
ENVIRONMENTAL INTEGRITY                )
PROJECT, *et al.*,                                   )
                                                          )
                        Plaintiffs,               )
                                                          )
           v.                                          )        Civil Action No. 15-0139 (ABJ)
                                                          )
UNITED STATES ENVIRONMENTAL     )
PROTECTION AGENCY, *et al.*,               )
                                                          )
                        Defendants.             )
————————————————————————— )

## MEMORANDUM OPINION

Plaintiffs the Environmental Integrity Project, the Center for Food Safety, the Humane Society of the United States, Clean Wisconsin, Iowa Citizens for Community Improvement, and the Association of Irritated Residents have brought this action against the United States Environmental Protection Agency ("EPA") and the EPA Administrator, Regina McCarthy, complaining that the agency has not responded to their 2011 petition concerning ammonia gas pollution. Compl. [Dkt. # 1]. Plaintiffs ask the Court to declare that the EPA's failure to respond to the petition within a reasonable time violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and to compel the agency to respond to the petition within 90 days. Compl., Req. for Relief, at 25.

Defendants maintain that this is an action which falls within the scope of the citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), and therefore could not have been brought under the APA. Defs.' Mot. to Dismiss [Dkt. # 11] ("Defs.' Mot.") at 1–2. They have moved to dismiss the complaint on the grounds that plaintiffs failed to notify the EPA 180 days prior to commencing this action, as is required by section 304(a) of the Clean Air Act. *Id.* The Court finds

that the citizen-suit provision of the Clean Air Act does provide plaintiffs with an adequate remedy for the wrong they have alleged, and that plaintiffs have failed to comply with its notice requirement.   So plaintiffs are not free to bring an action under the APA, and there is no other applicable government waiver of sovereign immunity.   Thus, the Court lacks subject matter jurisdiction over this case, and defendants' motion to dismiss will be granted.[1]

## BACKGROUND

### I.   The Clean Air Act

The Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, establishes a program for the regulation and control of air pollution by the federal government and by the states.   It requires the EPA to establish National Ambient Air Quality Standards for "a small group of common air pollutants, called criteria pollutants," including "ozone, lead, and carbon monoxide." *Sierra Club v. Jackson*, 724 F. Supp. 2d 33, 35 (D.D.C. 2010), citing 42 U.S.C. §§ 7408–7409, and 40 C.F.R. §§ 50.8, 50.12, 50.15.   The statute directs that the EPA Administrator "shall from time to time . . . revise" the list of criteria pollutants.   42 U.S.C. § 7408(a)(1).

The Act also divides jurisdiction to review actions by the EPA between the district courts and the circuit courts. *See Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 657–58 (D.C. Cir. 1975).   Under section 307(b)(1), the United States Court of Appeals for the District of Columbia has exclusive jurisdiction to review an action of the EPA Administrator in promulgating

---

1       This does not mean that plaintiffs' concerns will never be presented to a court. *See* Pls.' Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 13] ("Pls.' Opp.") at 2 (stating that plaintiffs would "file a 180-day notice letter" and refile their unreasonable delay claim if the Court were to grant the motion to dismiss).   And if the EPA ultimately denies plaintiffs' petition, "plaintiffs will have recourse in the U.S. Court of Appeals for the District of Columbia Circuit, which will ensure that EPA's stated reasons for denying the petitions are consistent with the Act's language and structure." *Ctr. for Biological Diversity v. EPA*, 794 F. Supp. 2d 151, 158 n.3 (D.D.C. 2011), citing 42 U.S.C. § 7607(b)(1), and *Massachusetts v. EPA*, 549 U.S. 497, 533–34 (2007).

certain national standards and rules, as well as "any other nationally applicable regulations promulgated, or final action taken, by the Administrator." 42 U.S.C. § 7607(b)(1). The same section provides that an individual may file a petition for review of final actions of the Administrator that have local or regional application only in the federal court of appeals for the appropriate circuit. *Id.*

Section 304(a), the citizen-suit provision, permits any person to bring a civil action on his own behalf against the EPA Administrator in the district court "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," *id.* § 7604(a)(2), and it also permits the district courts "to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed." *Id.* § 7604(a).

## II.    Factual Background and Procedural History

On April 5, 2011, the Environmental Integrity Project and multiple other national, regional, and community-based organizations submitted a formal petition to the EPA asking it to do several things:  find that ammonia gas pollution endangers the public health and welfare; designate ammonia as a "criteria pollutant" under the CAA; and establish National Ambient Air Quality Standards for ammonia. Compl. ¶¶ 1, 4. Plaintiffs state that the EPA has yet to respond to or take any action with respect to their petition. *Id.* ¶ 5. So on January 28, 2015, plaintiffs initiated this action, and they ask the Court to declare that the EPA's failure to respond to the petition violates the APA and to order the agency to respond to the petition within 90 days.[2]  *See generally id.*

---

2    A similar action has been filed in this District by three of the plaintiffs in this matter and two other parties, challenging the EPA's delay in responding to a 2009 petition for rulemaking regarding the regulation of concentrated animal feeding operations under a different section of the CAA. Compl. [Dkt. # 1], *Humane Soc'y v. McCarthy*, No. 15-cv-0141 (TSC). The EPA has moved to dismiss the complaint on the same grounds as in this case. Mot. to Dismiss [Dkt. # 10], *Humane Society v. McCarthy*, No. 15-cv-0141 (TSC).

On April 6, 2015, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defs.' Mot.; Defs.' Mem. of P. & A. in Supp. of Defs.' Mot [Dkt. # 11] ("Defs.' Mem.").  Plaintiffs opposed the motion on April 23, 2015, Pls.' Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 13] ("Pls.' Opp."), and defendants filed a reply in support of their motion on May 18, 2015.  Defs.' Reply Mem. in Supp. of Defs.' Mot. [Dkt. # 15] ("Defs.' Reply").  One month later, with the Court's leave, *see* Min. Order (June 17, 2015), plaintiffs filed a surreply.  Pls.' Surreply [Dkt. # 17].

## STANDARD OF REVIEW

The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

The district courts of the United States "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  And the United States is not amenable to suit in the federal courts absent an express waiver of sovereign immunity.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "Sovereign immunity is jurisdictional in nature."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  When it has not been waived, sovereign

immunity shields the federal government, its agencies, and federal officials acting in their official capacities from suit. *Id.* (the federal government and its agencies); *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (federal officials in their official capacities). "[A]ny waiver of sovereign immunity must be narrowly construed in favor of the government." *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 547–48 (D.D.C. 2005), citing *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

In evaluating a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true, and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ANALYSIS

At this stage, the question before the Court is whether it has subject matter jurisdiction to review plaintiffs' claim that the EPA has unreasonably delayed in responding to their 2011 petition relating to the regulation of ammonia. This turns on whether the government has waived its sovereign immunity as to plaintiffs' claim, and if so, under which statute the waiver was effectuated – the Administrative Procedure Act or the Clean Air Act, which includes the 180-day notice provision.

Generally, when a plaintiff challenges agency action, the APA provides a cause of action for the plaintiff and a waiver of sovereign immunity by the government. *See Am. Road & Transp.*

*Builders Ass'n. v. EPA*, 865 F. Supp. 2d 72, 80–81 (D.D.C. 2012), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) (per curiam).   When that is the case, the district courts have subject matter jurisdiction under 28 U.S.C. § 1331, the general federal question statute.   *Id.* However, the APA makes clear that if another statute provides an "adequate remedy in a court," the APA cannot supply the cause of action, which means that it cannot serve as the waiver of sovereign immunity either.   *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review.") (emphasis added).

Defendants acknowledge that the APA is the source of an agency's duty to respond to a petition for rulemaking – including a petition seeking action under the Clean Air Act – within a reasonable time, and that plaintiffs have brought this action to enforce that obligation.   *See* Defs.' Reply at 2, 6; *see also* Compl. ¶ 70, citing 5 U.S.C. § 555(b), (e). But they argue that it is the citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), that waives sovereign immunity for claims that the EPA has unreasonably delayed taking action, and they contend that plaintiffs have failed to satisfy a statutory condition precedent for the waiver of the government's sovereign immunity here.   Defs.' Mem. at 8–10.   Specifically, they point out that plaintiffs failed to provide the EPA with the required 180 days' notice prior to bringing this action, and they assert that the APA cannot be invoked in an effort to evade that requirement.   *Id.* at 9–13, citing 5 U.S.C. § 702 ("Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."). Thus, defendants ask the Court to dismiss the case for lack of subject matter jurisdiction or for failure to state a claim in light of plaintiffs' failure to comply with the notice provision of the CAA.   *Id.* at 8–15.

Plaintiffs do not deny that they failed to provide the EPA with notice of their intent to bring this lawsuit. *See* Pls.' Opp. at 2. But they assert that the CAA's citizen-suit provision is not the source of jurisdiction in this case, because it "waives sovereign immunity only for suits alleging the Administrator failed to perform a *nondiscretionary* duty." *Id.* at 8 (emphasis in original). Because nothing in the CAA requires the EPA to respond to a rulemaking petition, plaintiffs contend that the APA is both the source of the duty and the avenue for relief when that duty is not performed. *Id.* at 8–17.

Defendants agree that the CAA "does not impose a nondiscretionary duty on the Agency to make an endangerment finding" when a petition has been filed. Defs.' Reply at 6. But they observe that the gravamen of plaintiffs' complaint is that the EPA was required to do *something* in response to their petition seeking action under the CAA and that it failed to live up to that obligation. *Id.* Since plaintiffs could only press such a claim if the agency had a duty to act, defendants contend that this action seeking to compel EPA to fulfill its duty "falls within the scope of Section 304(a)," even if the duty itself is derived from the APA.[3]  *Id.*

The question before the Court, then, is whether the citizen-suit provision of the CAA provides a basis to challenge the EPA's failure to satisfy its general duty under the APA to "conclude a matter presented to it" "within a reasonable time." *See* 5 U.S.C. § 555(b). This is not

---

3     Plaintiffs state that "EPA has repeatedly taken the position before this Court that citizen-suit authority under the CAA does not extend to actions seeking review of discretionary actions," and they argue that the Court should judicially estop defendants from arguing otherwise in this matter. Pls.' Opp. at 7–8, 17–21. But it does not appear that defendants are asking the Court to apply the citizen-suit provision to purely discretionary functions, so there is nothing to estop. *See* Defs.' Mem. at 9 ("Section 304(a) of the CAA . . . expressly requires that any party bringing a claim based on EPA's alleged unreasonable delay in taking a *required action* under the CAA must notify EPA at least 180 days prior to filing suit.") (emphasis added); Defs.' Reply at 5 ("Plaintiffs cannot deny that their claim, whether styled as arising under the APA or the CAA, seeks to compel EPA to take *required* action which they allege has been 'unreasonably delayed.'").

an easy question.  Based upon the text of the statute as it has been amended, the authorities that are binding on this Court, and the legislative history of the most recent amendments to the provision in question, the Court finds that it does.  Since the citizen-suit provision provides the plaintiffs with an adequate remedy in court, and since plaintiffs failed to afford defendants the 180-day notice required by that provision, plaintiffs have not secured a waiver of the government's sovereign immunity, and the Court lacks jurisdiction over the matter.

I.     **Section 304(a) of the CAA provides a cause of action for a claim that the EPA unreasonably delayed in taking an action required under the APA.**

In order to determine whether section 304(a) provides plaintiffs with a remedy for their claim that the EPA unreasonably delayed in responding to a rulemaking petition, the Court must examine the text and history of the Clean Air Act and the citizen-suit provision.

Prior to 1990, the citizen-suit provision provided, in relevant part:

> (a) Authority to bring civil action; jurisdiction
>
> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf –
> * * *
>> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator[.]
> * * *
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties . . . to order the Administrator to perform such act or duty, as the case may be.

42 U.S.C. § 7604(a) (1990).

In *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987), the D.C. Circuit found that this provision gave the district courts jurisdiction over any claim that the agency had failed to perform a "nondiscretionary" duty, which the Court defined narrowly as a duty for which the applicable statute specifies the date by which the agency must act.  *Id.* at 788–92.  But it emphasized that the

Court of Appeals would retain jurisdiction over claims that the agency had failed to perform a duty that would be "discretionary" under that definition:

> Where Congress has established no date-certain deadline – explicitly or implicitly – but EPA must nevertheless avoid unreasonable delay, it does not follow that EPA is, for the purposes of section 304(a)(2) under a nondiscretionary duty to avoid unreasonable delay. Instead, this type of duty is discretionary and . . . this court reviews claims alleging unreasonable delays of this type in order that we may protect our eventual jurisdiction under section 307 to review the final EPA action.

*Id.* at 792. Thus, looking at the text of the statute in 1987, the D.C. Circuit found that the district court could not properly exercise jurisdiction over the plaintiff's claim that the EPA had unreasonably delayed in concluding a rulemaking regarding the regulation of strip mines, because the Clean Air Act did not require the EPA to conclude the rulemaking by a specific date. *Id.* The Court also held that the agency was bound by the APA's duty of reasonable timeliness when it conducted the rulemaking, and it found that it could properly exercise jurisdiction over the plaintiff's unreasonable delay claim because the agency's failure to avoid unreasonable delay was, in effect, a final agency action. *Id.* at 796–97.

Three years after the D.C. Circuit's decision in the *Thomas* case, Congress amended the citizen-suit provision to add the language that appears in bold below:

> (a) Authority to bring civil action; jurisdiction
>
> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf –
> ***
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator[.]
> ***
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties . . . to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties (except for actions under paragraph (2)). **The district courts of the United States shall have jurisdiction to compel (consistent with**

> **paragraph (2) of this subsection) agency action unreasonably delayed . . . . In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) of this section shall be provided 180 days before commencing such action.**

42 U.S.C.A. § 7604(a); *see also* Clean Air Act Amendments, Pub. L. No. 101–549, § 707(f), 104 Stat. 2399 (1990).

The D.C. Circuit recently discussed the impact of this amendment on the Act's bifurcated jurisdictional scheme.  In *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544 (D.C. Cir. 2015), the Court observed that the *Thomas* opinion "addressed the circumstances in which courts may compel the EPA to take action under the Clean Air Act, and, in that context, held that this court had exclusive jurisdiction over claims to compel agency action 'unreasonably delayed.'"  *Id. at* 553 n.6 (D.C. Cir. 2015), citing *Thomas*, 828 F.2d at 792–96.  But the Court went on to explain that "Congress in the 1990 Amendments to the Clean Air Act abrogated *Thomas*'s jurisdictional holding and shifted to the district court the power to compel EPA to act" in those circumstances.[4] *Id.*  This interpretation of the Clean Air Act is binding upon this Court.

Plaintiffs, however, seek to proceed as if nothing has changed since *Thomas*.  They contend that the revised citizen-suit provision must be construed as narrowly as it was in 1987, and that it does not provide an avenue for bringing claims to review what the *Thomas* court called "discretionary" actions of the Administrator, including claims that the Administrator has engaged

---

[4]    The circumstances at issue in *Thomas* were similar to those facing the Court here.  In *Thomas*, the plaintiff contended that the EPA had "unreasonably delayed in promulgating regulations governing fugitive emissions from strip mines," and it asked the D.C. Circuit to compel the EPA to conclude its rulemaking on that issue.  828 F.2d at 787.  The Court observed that the CAA "impose[d] no date-certain deadline on EPA to conclude the rulemaking," either explicitly or implicitly by reference to the overall statutory scheme.  *Id.* at 792.  Rather, like the plaintiffs' complaint here, the D.C. Circuit found that "the gravamen" of the plaintiff's complaint "is that EPA is taking an unreasonably long time to reach a decision."  *Id.* at 794.

in unreasonable delay.  Pls.' Opp. at 10 ("[A] cause of action only arises under section 304 where the CAA imposed on the Agency a nondiscretionary duty to take discrete action.").

It is true that "[b]ecause 'a delay cannot be unreasonable with respect to action that is not required,' an unreasonable-delay claim requires that the agency has a duty to act in the first place." *Ctr. for Biological Diversity v. EPA*, 794 F. Supp. 2d 151, 156 (D.D.C. 2011), quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 n.1 (2004).  But here, the Administrator *is* obligated to act, because the APA requires that the EPA "conclude a matter presented to it" – including responding to a rulemaking petition – "within a reasonable time."  5 U.S.C. § 555(b); *see also Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 794 F. Supp. 2d 39, 44–45 (D.D.C. 2011) (discussing sections 553(e) and 555(b) of the APA and concluding that "an agency 'is required to at least definitively respond to . . . [a] petition – that is, to either deny or grant the petition'"), quoting *Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009).[5]

---

5      For this reason, plaintiffs' citation of *Monongahela Power Co. v. Reilly*, 980 F.2d 272 (4th Cir. 1992), and *Natural Resource Defense Council v. Train*, 510 F.2d 692 (D.C. Cir. 1975), for the proposition that the citizen-suit provision "cannot be read to invite review of discretionary actions of the Administrator," *see* Pl.'s Opp. at 9–10, does not advance their position.  And *Train* was decided well before the 1990 amendments altered the Clean Air Act's jurisdictional scheme.

Plaintiffs also rely on *Zook v. McCarthy*, 52 F. Supp. 3d 69 (D.D.C. 2014), *see* Pls.' Opp. at 10, but in that case, the court did not address the question of whether it had subject matter jurisdiction to hear an unreasonable delay case under the Act; rather, it was ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See id.* at 73.  The complaint was somewhat unclear, and the court determined that whether the plaintiffs were complaining about the agency's failure to perform nondiscretionary duties, or about unreasonable delays in performing those duties, they failed to state a claim because there was no duty to take the action at issue in any event. *Id.* at 73–75.  Specifically, the court found that it did not have the power to compel the EPA to place certain pollutants on the "criteria pollutants" list and establish air quality criteria for them because the threshold endangerment finding that triggers the duty to list a pollutant is a matter committed to the Administrator's discretion.  *Id.* at 74.  In other words, in *Zook*, the court took jurisdiction over the complaint and ruled on the merits.  This opinion deals with jurisdiction only, and does not reach the question of whether an unreasonable delay claim that cites the APA, as opposed to the Clean Air Act as in *Zook*, will ultimately succeed on the merits.

And while the APA, and not the Clean Air Act, may be the source of the duty to act with reasonable speed, and at the time of *Thomas*, the D.C. Circuit defined the statutory term "nondiscretionary" in a manner that excluded that particular duty from section 304(a)'s reach, *see* 828 F.3d at 792, 797, *Mexichem* teaches that the statutory regime has changed, and that Congress has taken action to transfer jurisdiction over claims alleging a breach of the duty of reasonable timeliness to the district courts. It did that by specifically bringing the unreasonable delay claim under the auspices of the citizen-suit provision and by adding a pre-condition to the filing of an unreasonable delay action.[6] *See* 42 U.S.C. § 7604(a). Thus, with the 1990 amendments, the Clean Air Act became the vehicle for seeking a remedy for the EPA's alleged breach of this particular duty, notwithstanding the *Thomas* distinction.

The Court acknowledges, though, that there is some support for plaintiffs' position in the text of the statute. In the language added as part of the 1990 amendments, Congress provided that the district courts would have jurisdiction to compel agency action unreasonably delayed, but it noted in parentheses: "consistent with paragraph (2) of this subsection." 42 U.S.C. § 7604(a). Paragraph (2) of the subsection enables a citizen to commence an action against the Administrator for failure to perform an act or duty, but it specifies that it must be a failure to perform "any act or

---

6    This notice requirement provides further indication that Congress intended that unreasonable delay claims would be brought under the Clean Air Act, as opposed to the APA. "[A] specific statute controls over a general one," *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961), and while the Clean Air Act contains a specific prerequisite for filing a citizen suit challenging agency action unreasonably delayed, the APA contains no such limitation. Permitting plaintiffs to proceed under the APA would enable them to evade the notice requirement, which is "intended to preserve [the] agency's authority to enforce the regulations within its bailiwick (by preventing citizen suits from supplanting agency action) and to allow the agency 'an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit.'" *Ctr. for Biological Diversity*, 794 F. Supp. 2d at 155–56, quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29 (1989).

duty *under this chapter* which is not discretionary with the Administrator."   *Id.* § 7604(a)(2) (emphasis added).

Here, the parties are agreed that the duty to rule on a petition within a reasonable time derives from the APA, and not "this chapter," *i.e.*, the Clean Air Act.  *See* Pls.' Opp. at 1 ("There is no provision of the CAA that requires EPA to respond to such a petition, no matter how egregious the delay."); Defs.' Reply at 6 (stating that "EPA agrees that Section 108 does not impose a nondiscretionary duty on the Agency to make an endangerment finding" in response to a petition); *see also Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001) (finding that the court's authority to provide relief is limited to "order[ing] the EPA to take nondiscretionary actions required by the statute itself," and that it could not order the EPA to make substantive findings), *aff'd*, 285 F.3d 63 (D.C. Cir. 2002).

Based on that analysis, one could argue that the language "consistent with paragraph (2) of this subchapter" in the amendment to section 304(a) limits unreasonable delay claims to those arising out of delay in the performance of a nondiscretionary act required by the Clean Air Act itself, and not an act required by the APA, such as the command to respond to a rulemaking petition in a timely fashion.  But unreasonable delay in performing a duty can be indistinguishable from the failure to perform the duty, *see Thomas*, 828 F.2d at 794–96, and prior to 1990, the district courts already *had* jurisdiction over claims to compel the EPA to perform the duties specifically imposed by the Clean Air Act that were not discretionary.  42 U.S.C. § 7604(a)(2) (providing for a cause of action "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary").

For the amendment to make any sense, then, there must be something different included within the scope of the new section 304(a) claims to compel the performance of agency action

unreasonably delayed that was not already covered by the pre-existing section 304(a)(2) cause of action to compel the performance of a nondiscretionary duty.   To read the statute otherwise would run counter to the "well-settled principle of statutory construction that all words in a statute are to be assigned meaning and not to be construed as duplicative or surplusage." *Haase v. Sessions*, 893 F.2d 370, 373 n.5 (D.C. Cir. 1990), citing *United States v. McGoff*, 831 F.2d 1071, 1083 (D.C. Cir. 1987).   The clause added at the end of section 304(a) must serve some purpose that was not achieved by the existing language, and the Court cannot easily square plaintiffs' reading of the amendments with that principle based on the text of the statute alone.

It is true that one can conceive of a limited set of unreasonable delay claims that would have been excluded under the previous version of the statute as it had been interpreted by *Thomas*: claims to compel the performance of duties imposed by the Clean Air Act without specific timetables.   One example of such a duty would be the requirement that the Administrator "shall from time to time" revise the list of criteria air pollutants.   42 U.S.C. § 7408(a)(1).   While that provision does not impose a date-certain deadline by which the EPA must revise the list of pollutants, and therefore, it does not fall within the category of nondiscretionary duties described in *Thomas*, it nevertheless establishes a requirement "under this chapter" to take a particular action at some point.   *See, e.g.*, *Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992) ("Only when a statute requires agency action at indefinite intervals, such as 'from time to time,' can 'unreasonable delay' be a meaningful standard for judicial review."). Was Congress simply targeting this class of claims with the 1990 amendments, granting the district courts jurisdiction solely over claims that the agency unreasonably delayed in performing Clean Air Act duties without due dates?

This is an extremely narrow subset of cases, and it does not appear from the text that was added to the statute that Congress intended the amendment to have such a limited effect.  First of all, in the 1990 amendments, Congress expressed a clear intention to expand the district courts' jurisdiction to include another type of claim – one to compel "agency action unreasonably delayed." 42 U.S.C. § 7604(a).  This new provision uses broader language than what was already found in section 304(a)(2) – it refers to compelling "agency *action*," and it does not repeat the more specific and limited language about nondiscretionary acts and duties imposed "under this chapter" found in the original statute.  The court must assume that Congress made the change for a reason.  *See Vonage Holdings Corp. v. FCC*, 489 F.3d 1232, 1240 (D.C. Cir. 2007) ("[W]here different terms are used in a single piece of legislation, the court must presume that Congress intended the terms to have different meanings."), quoting *Transbrasil S.A. Linhas Aereas v. Dep't of Transp.*, 791 F.2d 202, 205 (D.C. Cir. 1986).  For plaintiffs to prevail here, the Court would have to find that Congress utilized a vague parenthetical aside – "consistent with paragraph (2) of this subsection" – to impose a limitation on the new jurisdictional provision it went to the trouble to create when it did not do so explicitly, and it would have been easy to mirror the language of the existing provision.  This is a very roundabout way of doing things, so the best that can be said from plaintiffs' perspective is that the text of the statute is ambiguous.

In that case, the Court is bound to consider all of the tools at its disposal. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989), citing *United States v. Morton*, 467 U.S. 822, 828 (1984).  "The traditional tools [of statutory construction] include examination of the statute's text, legislative history, and structure, as well as its purpose." *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047

(D.C. Cir. 1997) (internal citations omitted).  Resort to legislative history is especially appropriate where, as here, a statute is unclear on its face.  *See, e.g.*, *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 625 (D.C. Cir. 1989).[7]

A review of the legislative history of the 1990 amendments confirms that the language at issue was specifically added to create a remedy in the district court for the full scope of potential unreasonable delay by the agency, including delay in responding to a rulemaking petition that was previously addressed only by the APA.  According to a December 1989 Senate Committee Report:

> The amendments will allow a citizen suit to be brought in Federal district court against the Administrator where the plaintiff alleges that EPA has failed to act, and further alleges that the failure violates one or more of the standards set out in section 307(d)(9) of the Act, or that the failure constitutes unreasonable delay.  *Under this amendment, the citizen suit provision of the Act will encompass the full range of inaction covered by the Administrative Procedure Act (AP[A]).*  Under this amendment, the district courts would be granted authority to compel actions by the Administrator that have been unreasonably delayed, as well as to design remedies to address EPA failures to act that are arbitrary, capricious, and abuse of discretion or not in accordance with law.

S. Rep. No. 101-228 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3757 (emphasis added); *see also* 136 Cong. Rec. 36,086 (1990) ("[F]ailure of the agreement to adopt the senate bill language that established a timeframe for EPA response to citizen petitions is in no way an endorsement of the numerous delays that have characterized the agency's actions on a number of key air pollution issues.  Instead, it reflects the judgment of the conferees that EPA's conduct is better addressed by the more flexible case-by-case approach inherent in 'unreasonable delay' suits.").

---

7    While "the bar is high," a court even "may examine the statute's legislative history in order to shed new light on congressional intent, notwithstanding statutory language that appears superficially clear."  *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003) (internal quotation marks and citations omitted).

Similarly, an October 1990 Conference Report issued shortly before the amendments were adopted provides further indication that Congress intended to incorporate the APA cause of action for unreasonable delay into the citizen-suit provision:

> The bill changes the judicial review scheme under the act by giving the district courts jurisdiction to compel Agency action that has been unreasonably delayed.  The bill provides that a suit to compel Agency action referred to in section 307(b) of the act that is claimed to be unreasonably delayed may be filed only in a district court within the circuit in which the Agency action would be reviewable under section 307(b).
>
> This provision has a broad effect because Agency action referred to in section 307(b) includes any final action taken by the Administrator under the act.  Thus, for example, final Agency action in the form of a response to a petition for rulemaking would fall within this category.  *A suit alleging unreasonable delay by the Administrator in responding to such a petition could therefore be heard only by a district court within the circuit of the court of appeals that could review the Administrator's response to the petition for rulemaking.*
>
> This unreasonable delay jurisdiction, like the unreasonable delay jurisdiction that the circuit courts of appeals now have, authorizes the appropriate courts to enforce the provision of the Administrative Procedure Act that requires an agency, "within a reasonable time," to "proceed to conclude a matter presented to it."  *Thus, unreasonable delay jurisdiction is designed to allow the courts to compel the Agency to respond to a petition for rulemaking or other request for Agency action if the Agency has made no response within a reasonable time after the request has been presented to it.*  For example, the Agency must respond within a reasonable time to a petition for revision of a nation ambient air quality standard under section 109 of the act.  If the Agency does not do so, the jurisdiction of the appropriate district court could be invoked.

136 Cong. Rec. E3670-01, 1990 WL 206958 (emphasis added).[8]

---

8       The report went on to note that "suits under the existing section 304(a)(2) . . . are limited to claims that the Administrator has failed to perform a clear-cut nondiscretionary duty to take a statutorily specified action by a statutorily specified deadline."  136 Cong. Rec. E3670-01, 1990 WL 206958.  This implies that Congress was, at the very least, aware of the D.C. Circuit's ruling in *Thomas* when it amended the citizen-suit provision to vest the district courts with jurisdiction over unreasonable delay claims.

The scenario contemplated by the Conference Report is precisely the one presented by plaintiffs' claim in this case.  Plaintiffs are asking the Court "to compel the Agency to respond to a petition for rulemaking" because "the Agency has made no response within a reasonable time after the request has been presented to it." *Id.*; *see also* Compl., Req. for Relief, at 25 (asking the Court to "[o]rder EPA to respond to the 2011 Petition within 90 days" because EPA "fail[ed] to provide a timely response to the 2011 Petition").  And the Conference Report clearly indicates that Congress intended that such claims be brought before the district courts via the citizen-suit provision.  Thus, the Court finds that section 304(a) of the Clean Air Act affords plaintiffs a remedy in court for their claim that the EPA engaged in unreasonable delay in responding to the 2011 petition calling for action under that statute.

## II.  Plaintiffs have failed to secure the waiver of the government's sovereign immunity under either the CAA or the APA.

The Court has concluded that the citizen-suit provision provides the cause of action for plaintiffs' claim that the EPA unreasonably delayed in responding to the 2011 petition for rulemaking regarding ammonia gas.  That provision also includes a requirement that "[i]n any such action for unreasonable delay, notice to [the Administrator] . . . shall be provided 180 days before commencing such action." 42 U.S.C. § 7604(a).  "When suit is filed against a government agency, these [notice] requirements are, as conditions on the government's waiver of sovereign immunity, jurisdictional." *Ctr. for Biological Diversity*, 794 F. Supp. 2d at 154, citing *Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 102–03 (D.D.C. 2010); *see also Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989) ("[C]ompliance with [a] notice provision is a mandatory, not optional, condition precedent for suit.").

Plaintiffs appear to admit that they failed to provide the EPA with notice of their intent to bring an unreasonable delay claim relating to the 2011 petition.  *See* Pls.' Opp. at 2 (stating that

plaintiffs "*would . . .* file a 180-day notice letter" and "refile their complaint" if defendants' motion is granted) (emphasis added).   Thus, the Court finds that plaintiffs have failed to satisfy a mandatory condition precedent to bringing this suit and securing the government's waiver of its sovereign immunity under the CAA.  *See, e.g.*, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 154 (D.D.C. 2014) ("[A]s Plaintiff has failed to comply with the pre-suit notice requirements of the CAA, the Court does not have jurisdiction over Plaintiff's proposed CAA claim.").

Plaintiffs cannot solve the problem by invoking the APA.  The APA subjects to judicial review only those agency actions "for which there is no other adequate remedy in a court."  5 U.S.C.  § 704.   In other words, "[t]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere."  *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005), quoting *Transohio Savs. Bank v. OTS*, 967 F.2d 598, 607 (D.C. Cir. 1993).  Because the citizen-suit provision provides an adequate remedy for claims that the EPA unreasonably delayed in responding to a citizen petition for rulemaking under the Clean Air Act, plaintiffs cannot rely on the APA to secure the government's waiver of its sovereign immunity.  *See, e.g.*, *Am. Rd. & Transp. Builders Ass'n*, 865 F. Supp. 2d at 81 ("If . . . another statute provides an 'adequate remedy in a court,' then the APA neither provides a cause of action nor waives sovereign immunity."), quoting 5 U.S.C. § 704.

The APA contains a separate restriction on its waiver of the government's sovereign immunity.  Section 702 provides that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  The citizen-suit provision expressly forbids granting plaintiffs the relief they seek – an order directing the EPA to respond to the 2011 petition – where, as here, notice of the intent to sue has not been provided to the Administrator 180 days in advance.  42 U.S.C. § 7604(a).

As another court in this district observed, the "APA does not provide a back door for plaintiffs to raise claims *pursuant* to other statutes . . . which disallow such claims." *Alliance to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 n.3 (D.D.C. 2007). Thus, plaintiffs are precluded from relying on the APA to secure the waiver of the government's sovereign immunity to suit.

### CONCLUSION

Since neither the APA nor the Clean Air Act waives the government's sovereign immunity under the circumstances here, the Court finds that it lacks subject matter jurisdiction over the dispute at this time. Accordingly, defendants' motion will be granted and this case will be dismissed.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  December 1, 2015